IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

TRUSTEES OF THE NATIONAL
AUTOMATIC SPRINKLER INDUSTRY
WELFARE FUND, *et al.*,

    Plaintiffs,

v.

BRISTOL FIRE PROTECTION, INC.

    Defendant.

Case No.: GJH-17-450

## MEMORANDUM OPINION

The Trustees of the National Automatic Sprinkler Industry Welfare Fund, National Automatic Sprinkler Local 669 UA Education Fund, National Automatic Sprinkler Industry Pension Fund, Sprinkler Industry Supplemental Pension Fund, and International Training Fund ("Plaintiffs" or the "NASI Funds") bring this action against Defendant Bristol Fire Protection, Inc. under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multi-Employer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1001 *et seq.* Following Defendant's failure to answer or otherwise defend in this action, the Clerk of the Court entered default against Defendant on June 7, 2017. ECF No. 8. Now pending before the Court is Plaintiffs' Motion for Default Judgment against Defendant pursuant to Fed. R. Civ. P. 55(b). ECF No. 7. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the reasons that follow, Plaintiffs' Motion for Default Judgment is granted, in part. Judgment is entered against Defendant in the total amount of $12,548.80.

# I. BACKGROUND[1]

The NASI Funds are multiemployer employee benefit plans as defined in Section 3(3) of ERISA, 29 U.S.C. § 1002(3). ECF No. 1 ¶ 2. The Funds are established and maintained according to the provisions of the Restated Agreements and Declarations of Trust establishing the NASI Funds ("Trust Agreements"), and the Collective Bargaining Agreements between Road Sprinkler Fitters Local Unions No. 669 (the "Union") and Defendant. *Id.* The NASI Funds are administered at 8000 Corporate Drive, Landover, Maryland 20785. *Id.*

Defendant is a corporation existing under the laws of the State of Connecticut with offices located in Connecticut. *Id.* ¶ 3. Defendant transacts business in the State of Connecticut as a contractor or subcontractor in the sprinkler industry, and at all times relevant to the action was an "employer in an industry affecting commerce" as defined by ERISA, 29 U.S.C. §§ 1002(5), (9), (11), (12) and (14), the Labor-Management Relations Act ("LMRA"), 29 U.S.C. §§ 142(1), (3) and 152(2), and Section 3 of the Multi-Employer Pension Plan Amendments of 1980, 29 U.S.C. § 1001(a). *Id.*

Plaintiffs allege that Defendant entered into a Collective Bargaining Agreement with the Union establishing terms and conditions of employment for journeymen and apprentice sprinkler fitters. *Id.* ¶ 4. Pursuant to the Collective Bargaining Agreement, Defendant was obligated to pay to the NASI Funds certain sums of money for each hour worked by its employees who were covered by the Collective Bargaining Agreement and was bound to the Trust Agreements and the Guidelines for Participation in the NASI Funds ("Guidelines"). *Id.* ¶¶ 5, 7. Under the terms of the Trust Agreements, when an employer becomes two or more months delinquent in making the required contributions, and has not submitted the proper reporting forms, the NASI Funds are permitted to project the amount of the employer's delinquency using the following formula:

---

[1] The background facts are taken from Plaintiffs' Complaint, ECF No. 1.

2

> [T]he greater of (a) the average of the monthly payments or reports submitted by the Employer for the last three (3) months for which payments or reports were submitted, or (b) the average of the monthly payments or reports submitted by the Employer for the last twelve (12) months for which payments or reports were submitted . . .

ECF No. 1 ¶ 9; ECF No. 7-8 at 26. Additionally, when an employer fails to timely pay required contributions, the employer is obligated to pay liquidated damages under the following calculation:

> (1) If payment is not received . . . by the 15th of the month, 10% of the amount [owed] is assessed.
> (2) An additional 5% is added if payment is not received . . . by the last working day of the month in which payment was due.
> (3) An additional 5% is added if payment is not received by the 15th of the month following the month in which payment was due.

ECF No. 1 ¶ 14; ECF No. 7-8 at 24.

According to the Complaint, Defendant employed individuals covered by the Collective Bargaining Agreement from February 2015 through the present but failed to make the required contributions to the NASI Funds and report hours worked by its employees for the months of August 2016 through January 2017. ECF No. 1 ¶¶ 6, 8. Further, Defendant's contributions for the months of February 2015 through April 2015, June 2015, September 2015, November 2015, December 2015, April 2016, and June 2016 were paid late. *Id.* ¶ 11. In their Complaint, Plaintiffs request $13,036.53 for contributions due for work performed from August 2016 through January 2017, liquidated damages in the amount of $7,952.01 assessed on the late contributions, contributions and liquidated damages that become due subsequent to filing the Complaint, and costs, interest, and reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g). *See* ECF No. 1.

Subsequent to filing the Complaint, Plaintiffs served Defendant and a Summons was returned as executed on March 1, 2017. *See* ECF Nos. 3, 4. With no Answer having been filed,

Plaintiffs moved for an entry of default against Defendant on May 11, 2017, ECF No. 6, and the Clerk entered default against Defendant on June 7, 2017. ECF No. 8. In their Motion for Default Judgment, which was served on Defendant, Plaintiffs allege that subsequent to filing their Complaint, Defendant submitted reports and paid contributions owed for work performed during the period of August 2016 through November 2016 but failed to pay contributions for the months of February and March 2017. ECF Nos. 7-1; 7-3 ¶¶ 7–8.

Plaintiffs' Motion for Default Judgment, ECF No. 11, is now ripe for review. Having considered the well-pleaded allegations of the Complaint, and the Motion for Default Judgment and supporting documentation, the Court now grants default judgment against Defendant and in favor of Plaintiffs, in the total amount of $12,548.80, broken down as follows: $6,847.93 in unpaid contributions; $2,607.31 in liquidated damages; $585.00 in costs, $1,466.50 in attorneys' fees; and $1,042.06 in interest.

## II. STANDARD OF REVIEW

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court." *Educ. Credit Mgmt. Corp. v. Optimum Welding*, 285 F.R.D. 371, 373 (D. Md. 2012). Although "[t]he Fourth Circuit has a 'strong policy' that 'cases be decided on their merits,'" *Choice Hotels Intern., Inc. v. Savannah Shakti Carp.*, No. DKC-11-0438, 2011 WL 5118328 at *2 (D. Md. Oct. 25, 2011) (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), "default judgment may be appropriate when the adversary process has been halted

because of an essentially unresponsive party[.]" *Id.* (citing *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005)).

"Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not." *Lawbaugh*, 359 F. Supp. 2d at 422. Thus, the court first determines whether the unchallenged factual allegations constitute a legitimate cause of action. *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010). In determining whether the factual allegations constitute a legitimate cause of action, courts typically apply the *Iqbal/Twombly* pleading standard. *See Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544 (D. Md. 2011) (finding *Iqbal* "relevant to the default judgment inquiry"). Under *Iqbal*, a complaint fails to state a claim entitling the pleader to relief if the complaint offers only "'labels and conclusions'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007)). As the Fourth Circuit has recognized, "'the court need not accept the legal conclusions drawn from the facts, and [ ] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Monroe v. City of Charlottesville*, 579 F.3d 380, 385–86 (4th Cir. 2009) (citation omitted), *cert. denied*, 559 U.S. 992 (2010); *accord Simmons v. United Mortg. & Loan Investment, LLC*, 634 F.3d 754, 768 (4th Cir. 2011). Indeed, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

If liability is established, the court then makes an independent determination of damages. *Agora Financial, LLC*, 725 F. Supp. 2d at 494. Fed. R. Civ. P. 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from,

or exceed in amount, what is demanded in the pleadings." In entering default judgment, a court cannot, therefore, award additional damages "because the defendant could not reasonably have expected that his damages would exceed th[e] amount [pled in the complaint]." *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000). While the court may hold a hearing to prove damages, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins*, 180 F. Supp. 2d at 17 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)); *see also Laborers' District Council Pension, et al. v. E.G.S., Inc.*, No. WDQ-09-3174, 2010 WL 1568595, at *3 (D. Md. Apr. 16, 2010) ("[O]n default judgment, the Court may only award damages without a hearing if the record supports the damages requested.").

## III. DISCUSSION

### A. Liability

Under ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; *see Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Camelot Constr., Inc.*, No. 1:14-CV-161-LMB-TRJ, 2015 WL 13050031, at *3 (E.D. Va. Apr. 14, 2015).

Because Defendant has failed to appear or otherwise defend, the Court accepts as true the well-pleaded factual allegations in the Complaint. *Ryan*, 253 F.3d at 780. Those allegations establish that: Defendant was obligated by the terms of the Collective Bargaining Agreement, the Trust Agreements, and the Guidelines to make timely contributions to the NASI Funds for any hours worked by covered employees, Defendant failed to make any contributions for the months

of December 2016 through March 2017, and Defendant's contributions for the months of February 2015 through April 2015, June 2015, September 2015, November 2015, December 2015, April 2016, August 2016, and October 2016 through December 2016 were late. The Complaint therefore establishes that Defendant is liable to the Trustees for those unpaid contributions and for additional damages as set out in the governing agreements.

### B. Damages

Regarding damages, 29 U.S.C. § 1132(g)(2) provides that in any action brought to enforce the payment of delinquent contributions, and in which a judgment in favor of the plan is awarded, the court shall award the plan:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
>   i. interest on the unpaid contributions, or
>   ii. liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2); *see also Board of Trustees Sheet Metal Workers' Nat. Pension Fund v. Columbus Show Case Co.*, No. 1:14-CV-478, 2014 WL 3811252, at *4 (E.D. Va. Aug. 1, 2014); *Int'l Painters & Allied Trades Indus. Pension Fund v. Capital Restoration & Painting Co.*, 919 F. Supp. 2d 680, 686 (D. Md. 2013); *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Lake Side Plumbing & Heating, Inc.*, No. 1:12-CV-00298 LO/IDD, 2012 WL 6203001, at *4 (E.D. Va. Nov. 20, 2012).

In support of the request for damages, Plaintiffs refer to the Declaration of John P. Eger, who attests that Defendant in fact failed to make payments under the Trust Agreements for December 2016 through March 2017 and failed to submit report forms for those months. ECF No. 7-3 ¶ 8. Eger also attests to a projected delinquency for these months in the amount of $6,847.93, using the projection formula described *supra*. ECF No. 7-3 ¶ 10. Pursuant to the liquidated damages formula, and as Eger attests in his Declaration, Plaintiffs ask the Court to award $7,773.01 in liquidated damages. ECF No. 7-3 ¶ 14; *see also* ECF No. 7-14 (tabulation of contributions owed and liquidated damages). However, pursuant to 29 U.S.C. § 1132(g)(2)(C)(ii), the Court may not award liquidated damages in excess of 20 percent of the unpaid contributions. Therefore, Plaintiff is only entitled to liquidated damages in the amount of $2,607.31. *See Boland v. Hetrick*, No. 16-403(RBW), 2017 WL 4402384, at *5 (D.D.C. Oct. 2, 2017) (declining to award liquidated damages in excess of twenty percent of unpaid contributions on motion for default judgment); *Trustees of Plumbers and Pipefitters Nat. Pension Fund v. American Plumbing, Inc.*, No. 1:08CV910 (JCC/JFA), 2008 WL 5381355, at *6, n.3 (E.D. Va. Dec. 22, 2008).[2]

Additionally, Plaintiffs seek interest assessed at twelve percent per annum on unpaid contributions through May 15, 2017, and accruing through the date of payment, totaling $1,042.06. ECF No. 7-1 at 2. The interest is owed pursuant to 29 U.S.C. § 1132(g)(2)(B) and the

---

[2] The Court grants Plaintiffs liquidated damages in the amount of 20 percent of $13,036.53, which represents Defendant's delinquent contributions as of the time the Complaint was filed. Although Defendant subsequently reduced the amount of its delinquency prior to Plaintiffs' Motion for Default Judgment herein, "an employer cannot escape its statutory liability for . . . liquidated damages . . . simply by paying the delinquent contributions before entry of judgment in a § 502(g)(2) action brought to recover delinquent contributions." *See Board of Trustees, Sheet Metal Workers' Nat. Pension Fund v. Aeromark Mechanical, Inc.*, No. 1:12-CV-18, 2013 WL 4399324, at * 2 (E.D. Va. Aug. 13, 2013) (citing *Iron Workers Dist. Council of W. New York and Vicinity Welfare and Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1506 (2d Cir. 1995)) (further noting that while the Fourth Circuit has not addressed this issue, the majority position aligns with that set forth in *Iron Workers*). Furthermore, while the Court may award liquidated damages in excess of 20 percent "as may be permitted under Federal or State law," Plaintiffs fail to provide the Court with any such authority to otherwise allow award of the full amount of the liquidated damages as allowed by in the Trust Agreements.

Trust Agreements. In support of their damages, Plaintiffs further attach all the relevant contracts, Trust Agreements, and Policies. *See* ECF Nos. 7-4 through 7-13.

Finally, in support of their claim for attorneys' fees and costs, Plaintiffs submit the declarations of their attorney, Charles W. Gilligan, ECF No. 7-15, a spreadsheet specifying the hourly billing by Gilligan and his paralegal with respect to the instant lawsuit, ECF No. 7-16, and invoices for costs spent on out-of-state process service, ECF No. 7-17. These materials indicate that Gilligan's firm spent 11.25 hours on this case on behalf of Plaintiffs, at a rate of $122.00 per hour for paralegal time and $310.00 per hour for attorney time. ECF No. 7-15 ¶¶ 3, 4. These rates are within the local guidelines and are reasonable. *See* Loc. R. App. B (D. Md. 2016). Plaintiffs are therefore awarded $1,466.50 in attorneys' fees. The record also substantiates the following expenses: $185.00 for service of process and $400.00 for filing fees. ECF No. 7-15 ¶¶ 6, 7. Thus, Plaintiffs are awarded $585.00 in costs.

The Court notes that the judgment it is awarding includes unpaid contributions for the months of February and March 2017 that were not sought in the initial Complaint, and that under Fed. R. Civ. P. 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." This is "because the defendant could not reasonably have expected that his damages would exceed th[e] amount [pled in the complaint]." *In re Genesys*, 204 F.3d at 132 (4th Cir. 2000). However, in cases where plaintiffs sought in their Complaint an additional unspecified amount that would become due in subsequent months, this Court has held that defendants properly "had notice of what could be included in any additional damages," and furthermore "received notice of the specific amounts Plaintiffs sought to recover in default judgment when they were served with copies of Plaintiffs' Motion for Default Judgment." *Trustees of the Nat'l Automatic Sprinkler Indus. Welfare Fund v. Harvey*, No. GJH-15-521, 2016

WL 297425, at *6 (D. Md. Jan. 21, 2016). *See also Trustees of Nat'l Automatic Sprinkler Indust. Welfare Fund v. First Responder Fire Prot. Corp.*, No. GJH-16-4000, 2017 WL 3475678, at *2 (D. Md. Aug. 11, 2017) ("Defendant is fairly regarded to be on notice of the subsequent increase due to the continuing obligations to make contributions to the Funds under the applicable collective bargaining agreements."). As such, the Court finds that the additional award is proper under Rule 54(c).

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Default Judgment is granted, in part. Judgment is entered against Defendant and in favor of Plaintiffs in the total amount of $12,548.80. Additionally, post-judgment interest shall accrue until the judgment is satisfied pursuant to 28 U.S.C. § 1961. A separate Order shall issue.

Date: February 26, 2018

GEORGE J. HAZEL
United States District Judge